**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | |
|---|---|
| **JOHN DOE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNIVERSITY OF SOUTH ALABAMA** | ) |
| **and THE UNIVERSITY OF SOUTH** | ) |
| **ALABAMA BOARD OF TRUSTEES** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff John Doe brings this action for breach of contract and violation of Title IX, and other related claims.  This case arises out of the decision of the University of South Alabama to impose disciplinary sanctions against John Doe.  The Internal Case Number assigned by the Defendant to Doe's matter is: **2018046102**.  The disclosure of John Doe's identity will cause the student irreparable harm as this case involves matters of the utmost personal intimacy, including education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99.

Plaintiff seeks redress against Defendant University of South Alabama and the Trustees of the University of South Alabama (collectively, "USA" or "Defendant" ) due to the actions, omissions, errors, and the flawed procedures, and/or negligence and overall failure to provide Plaintiff with an expected standard of due process, concerning the wrongful allegations of sexual misconduct made against John Doe, a male, junior student at Defendant USA in good standing.

John Doe and Jane Roe were friends within the same social circle at USA. On March 1, 2019, it was at Jane Roe's request that John Doe come by her apartment to tutor her in organic chemistry.

It was Jane Roe who stated to John Doe, "are you trying to fuck".  After the tutoring session ended, John Doe left Jane Roe's company on good terms as they exchanged a mutual hug.  John Doe had provided tutoring assistance to Jane Roe at no charge, as he received remuneration for doing so with other students.  It was not until the next day, that  Jane Roe decided to report the evening of March 1 as "non-consensual" touching and sexual harassment.   Notwithstanding the paucity of direct evidence, including an  unforgivable lack of administrative continuity and simple, practical good sense during the investigatory process, Defendant USA held a hearing outside of John Doe's presence [despite repeated requests by him and his counsel to reschedule the matter] and found him guilty of sexual misconduct-sexual harassment.

In Defendant USA's finding that Plaintiff John Doe was guilty of sexual misconduct; Plaintiff John Doe was deprived of the most basic due process and equal protection rights and was discriminated against on the basis of his sex, male. In essence, there was a rush to judgment, pandering to the current anti-patriarchal political climate on college campuses and pressure from woman's groups, with little thought, if any, given the actual specifics of Plaintiff John Doe and Jane Roe's actual situation. John Doe was denied the following basic rights:   (1) the right to appear at his hearing ; (2) the right to a fair and unbiased hearing; (3) the right to be represented by counsel; (4) the right to confront and  cross-examine his accuser; and (5) the ability to call any witnesses.  The hearing was held on November 6, 2020 and the decision was rendered five days later [November 11, 2020] based only on the testimony of Jane Roe.  This in itself reflects the lack of impartiality and prejudgment against an accused male student.

Defendant USA failed to adhere to its own guidelines and regulations, and the guidelines and regulations themselves are insufficient to enable a student to have a fair hearing before an impartial

tribunal. The decision reached was discriminatory and/or arbitrary and capricious; given the evidence (or lack thereof), a discriminatory bias against males was required for a conclusion of sexual misconduct to be reached and sanctions imposed.

John Doe has been greatly damaged by the sanctions in that he (1) no longer be a full participant in university life, (2) his academic future has been severely damaged, (3) the monies spent on obtaining a college education at Defendant USA possibly squandered, (4) and (5) his psychological and emotional health has been greatly compromised by the entire ordeal. Thus, John Doe brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, the 14th Amendment to the Constitution of the United States and state law.

I.   **PARTIES**

1.      Plaintiff John Doe (hereinafter "Plaintiff" or "Doe") is a student at the University of South Alabama and is a resident of the State of Alabama.  Doe has completed a substantial amount of course-work towards his degree at the University of South Alabama,  however he faces sanctions from the school and potentially a notation on his transcript and school record.  Doe has applied for medical school to become a physician.

2.      The sanctions he faces from the University of South Alabama will substantially interfere with his application to and matriculation from medical school and may well derail his aspirations of becoming a physician and helping his community.

3.      Doe has paid a significant amount of money to the University of South Alabama with the expectation of receiving an education and, if he successfully completes his class-work, a degree.

4.      Defendant University of South Alabama and University of South Alabama Board of

3

Trustees ("USA" or "Defendant"), is a public university with its principal place of business at 307

University Blvd. N., Rm. 130; Mobile, Alabama 36688.

5.      USA is a public research university that was created by the Alabama Legislature in

May, 1963, and replaced existing extension programs operated in Mobile by the University of

Alabama.

6.      USA is divided into ten colleges and schools that include one of Alabama's two

state-supported medical schools.  In the fall semester of 2018, South Alabama had an enrollment of

15,093 students.

## II.      JURISDICTION AND VENUE

7.      This case arises, in part, under the Does of the United States, specifically Title IX of

the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., 42 U.S.C. § 1983, and the 14th

Amendment to the United States Constitution.  Accordingly, this Court has jurisdiction in this matter

pursuant to 28 U.S.C. §§ 1331 and 1343.

8.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any

other claims in this case, as the claims are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States

Constitution.

9.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §

1391. The Defendant is a resident of the State in which this district is located and a substantial part

of the events or omissions giving rise to the claim occurred in this district.

4

III.     **FACTS COMMON TO ALL COUNTS**

10.     Doe was accused of sexual misconduct arising out of events that occurred on March 1, 2019 (the "Incident").

11.     Doe unequivocally denies engaging in any misconduct or violation of the Sexual Misconduct Policy.

12.     Doe and Jane Roe had been friendly before the "Incident" as they are both on the medical school track and therefore have taken several classes together.  Doe maintains a very high grade point average and has done very well in all of his classes.  Based on his academic performance, Doe has at times voluntarily served as a tutor for his classmates, including his accuser.

13.     Doe and Jane Roe were friendly and had engaged in casual banter about school on numerous occasions.

14.     Months before the incident, Doe shared with Jane Roe that he had sexual relations with one of her friends.  Upon learning of this fact, Jane Roe stated, "you were supposed to be for me."  Doe sensed that Jane Roe was upset over learning this information, but did not understand why as he had not expressed or indicated any romantic interest in her.

15.      On or about March 1, 2019, Jane Roe texted and/or called Doe in the daytime hours about helping her understand a chemistry assignment.  Doe expressed that he was busy, but that he could maybe make time to assist her later.

16.     Doe also explained to Jane Roe that because of the complexity of the problem [organic chemistry] he would need to explain it in person.  Jane Roe did not object to him scheduling her tutoring session that night, nor did she object to Doe coming to her residence to provide the requested assistance.  Jane Roe did not try to reschedule the requested tutoring session for another

time that weekend or another location, as March 1, 2019 was a Friday.

17.     Between the hours of 8:30 and 9:00 p.m., Doe called Jane Roe and asked her whether it was still feasible for him to stop by and provide the academic assistance she had requested.  She stated to him, "what are you doing trying to fuck."  Doe stated "no" and again asked whether their session was still needed.  Jane Roe stated yes.

18.     Doe arrived at Jane Roe's apartment between the hours of 9:00 and 10:00 p.m. and immediately began the tutoring session.  He explained the problem to Jane Roe and then prepared to leave.

19.     Doe and Jane Roe exchanged a friendly hug and one of his hands inadvertently brushed against her buttock.  After this consensual hug, Doe went home.  On March 2, 2019, Doe attempted to call Jane Roe to follow up on her progress with the assignment he had assisted her with, but she did not answer.  Doe never had any more substantive contact with Jane Roe.

20.     Upon information and belief, on March 2, 2019, Jane Roe made a complaint to USA Campus Police about the "Incident".

21.     On April 16, 2019, Jane Roe met with Dr. Krista Harrell, Title IX Coordinator and FeAunte Preyear a Victim's Advocate, both are female and are employed by USA.

22.     Upon information and belief, she accused Doe of her touching her inappropriately one to two times on her buttocks and making a sexually harassing statement three times.

23.     Jane Roe did not dispute that she sought tutoring help from Doe and that she consented to him coming to her room to provide that assistance.

24.     On August 22, 2019, Jane Roe met with Investigator Vernon C. Johnson, a USA employee, and Ms. Preyear.  She again alleged that Doe had touched her inappropriately and made

sexually harassing comments.

25.     Doe met with Mr. Johnson, with his father and attorney present, and refuted each and every allegation of his accuser.  Doe further denied each and every allegation of his accuser.  The evidence was such that Johnson could not draw any conclusions.  Despite these disputed facts and there being no witnesses to any of Jane Roe's allegations, USA officials set the matter for a hearing.

26.     After receiving these statements, a hearing date was set for March 20,  2020 but was postponed due to CoVid19.  On October 12, 2020, the matter was reset for hearing on November 6, 2020 by Dr. Andrea Agnew, a female Assistant Dean of Students.

27.     On October 15, 2020, Doe's counsel informed the Dean of Students that he had a conflict on the proposed hearing date, and offered alternative dates for the week of November 9, 2020.

28.     On October 31, 2020, Doe emailed Preyear about rescheduling the hearing and was informed, "Good afternoon ******, Thank you for responding to my email. Dr Andrea Agnew sent you the attached formal letter notification of the hearing on October 12, 2020 at 6:48 pm. Our system documented that you retrieved the letter two minutes later at 7:00 pm on that same day. Today, I was attempting to resend you the letter with the addition of the location of the hearing. The location of the hearing will be in the Marx Library in room 181 on Friday, November 6 at 2:00 pm. I will resend you the letter this evening. Please let me know if you have any additional questions or concerns." Preyear did not even attempt to address the scheduling issue, despite the fact that Plaintiff's counsel had communicated via email on prior occasions with Dr. Agnew.

29.     On October 31, 2020, Doe's counsel transmitted the following email to Preyear, "Ms. Preyear-Mr. Doe is represented by counsel and on October 15, 2020 I sent an email to Dr. Agnew

7

about moving the hearing date to a mutually agreeable date during the week of November 9, 2020, to which we received no response.  I have a conflict with November 6, 2020 as I expressed in my email, so we [Mr. Doe and I] cannot appear on the 6th as stated in your email below.  We want a fair and unbiased process here and don't want Mr. Doe's rights abridged in any way."

30.     On November 2, 2020, Preyear responded to Doe as follows, "Dear Mr Doe:  Thank you for communicating with me regarding your case. The hearing for your case will be facilitated as scheduled on November 6th at 2 pm in the Marx Library in room 181.  As you are aware, we rescheduled the first hearing date of February 28, 2020 because you requested additional notice related to your attorney traveling from out of town. Due to the pandemic, we attempted to schedule the hearing date for a virtual hearing on May 1, 2020, but you declined participation in a virtual hearing. The upcoming date is our third attempt at scheduling the hearing for this case.  On April 16, 2020, Dr Michael Mitchell, Dean of Students, responded to communication from your attorney and provided you and your attorney with information regarding your case. In that communication, you and your attorney were informed that the university's complaint resolution process is facilitated internally, and any communication regarding the case needs to come directly from you and not your attorney. The notification regarding the upcoming hearing date was sent to you on October 12th which was 24 days in advance. If you had a conflict with that date, it was your responsibility to communicate those issues with Dr Agnew in a timely manner, which you did not do."

31.     On November 2, 2020, Doe's counsel responded to Preyear's email as follows, "Ms. Preyear-thank you for your email; however, we did reach out to the Ms. Agnew on October 13, 2020 regarding the scheduling issue.  If  you proceed with this hearing without me being present will prejudice his rights to fair representation and due process.  Please reconsider your decision to move

this matter to the following week as we have a conflict that we made the University aware as soon as we found out."

32.     On November 2, 2020, Preyear replied as follows, "Mr Doe: Please let me know whether or not you intend to participate in the hearing scheduled for Friday, November 6th."

33.     On November 2, 2020, Doe again requested that the hearing be rescheduled, "Hello Ms. Preyear, Can we please schedule the hearing to a date the following the week of November 6th, as my Doeyer has already disclosed scheduling conflicts with the date of November 6th? Any date that you all choose the following week of November 6th, we will make them work. Please."

34.     On November 2, 2020, Preyear responded, "Thank you for your response, but we cannot reschedule the hearing date at this point in time. I apologize for any inconvenience that this may cause you. Please let me know whether or not you will participate in the hearing."

35.      On November 3, 2020, Doe responded to Preyear as follows, "Hello Ms. Preyear, Based on advice from counsel, I will not be participating. Thanks."  The hearing was held on November 6, 2020 without Doe's presence and a Notice of Decision and Sanctions was rendered against him on November 11, 2020, wherein he was found responsible for violation of USA's Policy against Sexual Misconduct-Sexual Harassment.

36.     On November 11, 2020, Doe filed an appeal with Michael Mitchell, VP for Student Affairs and Dean of Students.  Mr. Doe's appeal read as follows:

"Dear Dean Mitchell:

Please accept this letter as my appeal of the decision in my case. I am appealing on the following grounds:
       (1) There was a material and prejudicial violation of my right to procedural and substantive due process in that a decision was made without me being allowed to participate fully in the process and this affected the outcome of the hearing.

On October 15, 2020, my Doeyer informed school administrators of a conflict with the November 6, 2020 hearing date. Specifically, my counsel informed Dr. Andrea Agnew that he had a mediation scheduled in Memphis, Tennessee on the proposed hearing date and asked her to propose alternative dates the week of November 9th, 2020. Instead of the school administrators contacting me or my counsel regarding any problems with our request or that there was a problem with its form, they waited to the eve of the hearing to deny it. These administrators went on with the hearing without me.

I was denied equal protection under the Doe as well as the most fundamental guarantees of due process—without a hearing, without any opportunity to present my side of the story and was falsely declared guilty of sexual harassment. Moreover, the school failed to afford me the requisite presumption of innocence required by a preponderance of the

(2) The discipline imposed is excessive because at the most the incident in question here was a minor inadvertent touching-not sexual intercourse. However, due to my being found "Responsible" has basically banned me from large parts of University life and required me to attend sexual harassment training as if I am some kind of sex offender. Put simply, the punishment here is too severe, especially given that there is not one scintilla of evidence that I have engaged in a pattern and/or practice of aberrant sexual behavior. Based on the foregoing, I respectfully request that the decision regarding Case Number: 2018046102 be vacated or rescinded."

37.     Mr. Doe was allowed to express his side of the story to Mr. Mitchell, but did not

have the opportunity to confront his accuser. Unsurprisingly, Mr. Mitchell affirmed USA's prior

decision which was:

SANCTIONS:

There is a mutual No Contact Order between you and ****** *****. You are directed to avoid contact with her, until such time as this order is lifted in writing. You and ********* are to refrain from: (1) approaching one another at any time; (2) calling one another at any time; (3) sending correspondence via email, campus mail, or regular mail to one another; (4) contacting or communicating with one another, including through a third party, in any way at any time. Should you need to contact *******, you must do so through the office of the Dean of Students. You will have restricted access to the residential communities located within University Housing. Effective immediately, you may not visit University Housing, the Grove, or the Fresh Foods Company dining facility. You are also ineligible to live in any of the residential communities during the time period that the complainant is a resident.

You must complete the Sexual Assault Prevention Online Training Course that is offered by the

USA Title IX Office. You may access the course by visiting the Title IX website or by contact the Title IX Office (251-460-6452). This training must be completed within 30 days following the final determination of this case.

You must write a reflection essay (minimum 500 words) regarding the information that you learn while completing the Sexual Assault Prevention Online Training Course. The essay must be completed and forwarded to the Title IX Office via email (titleix@southalabama.edu) within 30 days following the final determination of this case.

You must write a letter of apology addressed to the complainant within 30 days following the final determination of this case. The letter must be forwarded to the Title IX Office via email (titleix@southalabama.edu) within 14 days following the final determination of this case."

38.     The discipline imposed by USA has caused Doe to be denied the benefits of

education at his chosen school, damaged his academic and professional reputations, and may affect

his ability to enroll at other institutions of higher education and to pursue his medical career

## IV.     COUNTS

### COUNT I

### (TITLE IX - SELECTIVE ENFORCEMENT)

39.     Title IX bars the imposition of discipline against students where gender is a

motivating factor in the decision to discipline. Title IX of the Education Amendments of 1972 (Title

IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations, 34 C.F.R. Part 106, prohibit

discrimination on the basis of sex in education programs or activities operated by recipients of

Federal financial assistance. Title IX provides in pertinent part: "No person ... shall, on the basis of

sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance."

40.     USA is an education program or activity operated by recipients of federal financial

assistance.

11

41.     USA  adopted its current Sexual Misconduct Policy in direct response to pressure from the U.S. Education Department's Office of Civil Rights ("OCR").

42.     On April 11, 2011, the OCR sent a "Dear Colleague Letter" to colleges and universities. The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and universities must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct. After the Dear Colleague Letter was published, many schools changed their sexual assault and sexual harassment policies and procedures in a manner that, while not completely ignoring due process concerns, shifted the focus more on victim advocacy.

43.     On September 22, 2017, the Department of Education withdrew the Dear Colleague Letter and indicated its intent to issue new guidance "through a rulemaking process that responds to public comment." [Ex. A].

44.     In withdrawing the Dear Colleague Letter, OCR observed that prior actions "may have been well-intentioned, but ... led to the deprivation of rights for many students- both accused students denied fair process and victims denied an adequate resolution of their complaints."

45.     OCR  further said: "Legal commentators  have criticized  the  2011 Letter ...for placing improper pressure upon universities to  adopt  procedures  that  do  not afford fundamental fairness."

46.     As a result, many schools  have  established procedures for resolving allegations that lack the most basic elements of  fairness and due process, are overwhelmingly stacked against the accused,  and  are in  no way required by Title IX law or regulation.

47.     On May 6, 2020, the D epartm en t of Education released a Final Rule under Title IX of the Education Amendments of 1972. The rule prohibits many of the current practices of schools

12

like USA for the investigation and adjudication of allegations of sexual misconduct. The Final Rule, inter alia, prescribes a transparent grievance process that treats accused students as innocent until proven guilty, requires the school to state a standard of evidence, and requires the school to provide a hearing process where accused students may question adverse witnesses. The Final Rule will carry the force and effect of law as of August 14, 2020.

49.     On information and belief, USA, like other schools nationwide, was scared of being investigated or sanctioned by the Department of Education for not taking seriously complaints of female students alleging sexual assault by male students. Sanctions would include the loss of eligibility for all federal funding. Upon information and belief, USA annually receives millions of dollars in government grants and contracts, and students depend on federal financial aid.

50.     The decisions of the hearing process and the appeal process for John Doe were erroneous outcomes which were the direct result of a flawed and biased proceeding. In a fair and unbiased system, whether someone is a 'victim" is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning.

51.     USA has reversed this process and assumed that John Doe was guilty because he was a male accused of sexual misconduct rather than evaluating the case on its own merits. The circumstances of the investigatory process and appeal process cast doubt on the accuracy of the outcome of the disciplinary proceeding.

52.     The Department of Education regulations and guidance state that Title IX requires a fair and equitable process for the adjudication of allegations of sexual misconduct.

53.     USA did not provide a fair and equitable process. USA committed impermissible gender bias against John Doe in the investigation and adjudication of Jane Roe's accusations.

13

53.     USA's decision-makers and its investigators were motivated to favor the accusing female over the accused male, so as to protect themselves and USA from accusations that they had failed to protect female students from sexual assault.

54.     On information and belief, USA was motivated in this instance to accept the female's accusation of sexual misconduct so as to show the student body and the public that the University is serious about protecting female students from sexual misconduct by male students. The investigators and administration adopted a biased stance in favor of the accusing female and against the defending male in order to avoid the criticism that USA turned a blind eye to such misconduct by men.

55.     USA has discriminated against John Doe because of sex. This discrimination is intentional and is a substantial or motivating factor for USA's actions in this case.

56.     Particular circumstances suggest that gender bias was a motivating factor behind the erroneous finding and the decision to impose discipline upon John Doe.

57.     These circumstances include: (1) USA, encouraged by federal officials, has instituted solutions to sexual violence against women that abrogate the civil rights of men and treat men differently than women; (2) USA has applied flawed or incorrect legal standards and employed biased or negligent investigatory techniques; and (3) USA officials and administrators who had the authority to institute corrective measures had actual notice of and failed to correct the misconduct

58.     The Sexual Misconduct Policy denies male students, like John Doe, the basic guarantees of fundamental fairness in hearings. These rights include an impartial decision-maker, the assistance of counsel, a hearing, the ability to confront adverse witnesses, the right to remain silent in the face of criminal accusations, and the presumption of innocence. The failure of USA to

afford accused students counsel or the opportunity to present evidence in their defense and to effectively cross-examine their accusers at a hearing is the result of gender bias under the auspices of "protecting" victims.

59.     USA assumed that Jane Roe, as an alleged female victim, was truthful and reliable. As a result of this gender bias, USA failed to adequately investigate and question Jane Roe's credibility.

60.     This is seen in the following ways: (1) USA did not once question Jane Roe's credibility; (2) USA failed to consider what, if any, accommodations or benefits Jane Roe received that may have affected her credibility and reliability; (3) USA practices and procedures appear to not necessarily be hostile to men, but can be seen as biased in favor of unfairly protecting "vulnerable" and "virtuous" females; and, (4) USA assumed that John Doe, as an accused male student, was not truthful and reliable.

61.     Throughout the disciplinary proceedings, USA and its agents demonstrated and acted on pervasive gender stereotypes.

62.     USA improperly relied on a stereotypical view of males as sexual aggressors and females as passive. In other words, John Doe was immediately viewed as the initiator of  sexual activity and Jane Roe as a 'gatekeeper' to his sexual desire.

63.     The decision of USA to  not investigate John Doe's allegations  against Jane Roe is based on a stereotypical view of males as sexual aggressors and females as passive - in this stereotypical view males are responsible for obtaining consent from females, but not the  other way around.  In this archaic view, men are perceived as always ready for sexual activity and therefore not the ones 'giving' their consent. In contrast, females are perceived as the ones setting boundaries on

all sexual activity and therefore not the ones 'obtaining' consent from others.

64.     USA holds a stereotypical view of sexual activity in which it is the female's role to limit sex, for both participants' own good, so the male is free to focus on outwitting her defenses to the extent necessary to achieve sexual activity.

65.     In this stereotypical view, women's standards typically represent a barrier each man must overcome, consistent with the stereotypical view of competitive and achievement-oriented aspects of masculine gender roles.

66.     USA committed impermissible gender bias against the Plaintiff in the investigation and adjudication of John Doe's accusations. In particular, USA ignored Plaintiff's statement that Jane Roe asked him was he "trying to fuck".

67.     USA committed impermissible gender bias against John Doe in the investigation and adjudication of Jane Roe's accusations. This discrimination is intentional and is a substantial or motivating factor for USA's actions in this case.

68.     USA violated Title IX by selectively enforcing its sexual assault policies on the basis of gender:

a.     Regardless of Plaintiff's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by John Doe's gender. A female student, Jane Roe, was in circumstances sufficiently similar to John Doe's and was treated more favorably by USA.

b.     The severity of John Doe's punishment was due to his gender because USA has maintained and perpetrated an archaic view of sexuality in which men are aggressors and women are "guardians of virtue".

16

69.     As a direct and proximate result of USA's violations of John Doe's rights under Title IX, John Doe has suffered severe and substantial damages.

   a.     John Doe has been deprived of access to educational opportunities at USA.

   b.     John Doe's damages include diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

70.     USA is liable to John Doe for his damages.

71.     Pursuant to 42 U.S.C. §1988, John Doe is entitled to his attorney's fees incurred in bringing this action.

## COUNT II

## (VIOLATION OF THE 14TH AMENDMENT PURSUANT TO 42 U.S.C. § 1983)

72.     The 14th Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law."

73.     Public university students have a property and liberty interest in their education.

74.     Defendant denied John Doe's due process rights when it held a hearing regarding allegations of misconduct leveled against him without his presence, conducted a biased and incomplete investigation, and held a hearing without proper due process protections.

75.     Defendant denied John Doe's due process rights when it imposed sanctions on him without considering the exculpatory evidence that he provided.

17

76.     Dr. Andrea Agnew and Feaunte Preyear exhibited their bias when they refused to reset John Doe's hearing date to the following week.  As a result of their bias, John Doe never received a hearing, let alone a fair one.

77.     Defendant's disciplinary policies and/or practices violated due process on their face for numerous reasons, including the following:

     a.     Male students who are accused of sexual misconduct are not presumed innocent;

     b.     Accused students are not given an opportunity to cross-examine their accusers or the witnesses against them, directly; and,

     c.     Male students are not guaranteed an opportunity for a fair and impartial hearing.

78.     As a result of these due process violations, John Doe was sanctioned and basically removed from campus life.

79.     USA is liable to John Doe for his damages.

80.     Pursuant to 42 U.S.C. §1988, John Doe is entitled to his attorney's fees incurred in bringing this action.

## COUNT III

## (BREACH OF CONTRACT)

81.     The relationship between John Doe and USA is governed by a number of policies and the Student Handbook.  By enrolling at USA, and paying his tuition and fees, and attending the school, John Doe and USA had a relationship that may reasonably be construed as being contractual in nature.

82.     As a direct and foreseeable consequence of these breaches, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational

opportunities, economic injuries and other direct and consequential damages.

83.    John Doe is entitled to recover damages for Defendant USA's breach of the express and/or implied contractual obligations described above.

84.    As a direct and proximate result of the above conduct, actions and inactions, John Doe has suffered physical, psychological, emotional and reputational damages, economic injuries and the loss of educational opportunities.

85.    As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## V.    PRAYER FOR RELIEF

Wherefore, Plaintiff  seeks the  following  relief  from the Court:

1.    Judgment in favor of John Doe on all counts;

2.    Pursuant to Fed. R. Civ. P. 65, a Preliminary Injunction restoring all of the rights and privileges heretofore taken from John Doe as a student, the removal of any negative notations on his transcripts and records, the restoration of his ability to register for classes, the restoration of any scholarships taken, and prohibiting further disciplinary proceedings in a manner that violates Title IX, the 14th Amendment, or the contract between the parties;

3.    A Permanent Injunction restoring John Doe as a student in good standing at USA;

4.    Judgment in favor of John Doe awarding damages in an amount to be determined at trial; and,

5.    Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by 42 U.S.C. §1988.

19

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,


s/Roderick T. Cooks
Roderick T. Cooks
Attorney for the Plaintiff

**OF COUNSEL:**
Winston Cooks, LLC
505 20th Street North
Suite 815
Birmingham, AL 35203
Tel:     (205) 502-0970
Cell:    (205) 482-5174
Fax:     (2050 278-5876
Email:  rcooks@winstoncooks.com

**DEFENDANT'S ADDRESS:**
University of South Alabama
Office of the President
University of South Alabama
307 University Blvd. N., Rm. 130
Mobile, Alabama 36688
Telephone: (251) 460-6111
FAX: (251) 461-1537