IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN DOE,                                              )
                                                       )
          Plaintiff,                                   )
                                                       )
v.                                                     )          20-CV-0609-MU
                                                       )
UNIVERSITY OF SOUTH ALABAMA, *et al.*,                 )
                                                       )
          Defendants.                                  )

## ORDER

On February 16, 2021, Defendants the University of South Alabama and The

University of South Alabama Board of Trustees (together "Defendants") filed a motion to

dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Defendants argue that

they are immune from Plaintiff John Doe's alleged claims and/or that Doe has failed to

state a claim against these Defendants upon which relief can be granted. Doe filed a

response in opposition to the motion to dismiss and Defendants filed a reply. Based

upon these filings and the pleadings filed herein, Defendants' motion to dismiss is

**GRANTED**, as set forth below.

## **FACTUAL ALLEGATIONS**[1]

Plaintiff John Doe, a student at the University of South Alabama, who has applied

for medical school, brought this action against Defendants seeking recovery for

selective enforcement/gender discrimination under Title IX (Count I), due process

---

[1]For purposes of this motion to dismiss, Plaintiff's factual allegations have been
accepted as true and viewed in the light most favorable to Plaintiff. *See McElmurray v.
Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

violations under the United States Constitution pursuant to 42 U.S.C. §1983 (Count II), and breach of contract (Count III). (Doc. 1). Doe's lawsuit arises from his involvement in a University disciplinary proceeding in which he was accused of sexual misconduct by another student, Jane Roe.

Doe alleges that, on the night of March 1, 2019, he was invited by Roe, a female friend also on the medical school track, to her apartment to tutor her in Organic Chemistry. (Doc. 1 at p. 5; PageID.5). As he was leaving after helping Roe with her chemistry problem, Doe and Roe "exchanged a friendly hug and one of his hands inadvertently brushed against her buttock." (Doc. 1 at p. 6; PageID.6). On March 2, 2019, Roe reported the incident to campus police, and during a later meeting with the University Title IX Coordinator, Roe accused Doe of inappropriate touching and making a sexually harassing statement three times. (*Id*.). The University's Title IX investigator Vernon Johnson met with Doe, his father, and his attorney, and Doe denied each of Roe's allegations. (*Id*. at pp. 6-7*;* PageID.6-7).

A hearing was set for March 20, 2020, but was postponed due to Covid-19.[2] (*Id.* at p. 7*;* Page ID.7). On October 12, 2020, the matter was reset for a hearing on November 6, 2020.[3] (*Id.*). On October 15, 2020, Doe's attorney informed University officials that he had a conflict that day and requested an alternative setting during the week of November 9, 2020. (*Id.*). On November 2, 2020, the University emailed Doe essentially informing him that they did not consider the request to move the hearing sent

---

[2] A hearing was originally scheduled in February 2020, but upon Doe's request to allow more time to accommodate his out-of-town counsel, it was rescheduled to March. (*Id.*, PageID.8.).

[3] The University asked Doe to participate in a virtual hearing in May of 2020; however, Doe declined to participate in a virtual hearing. (*Id.*at p. 8; PageID.8).

by his attorney on October 15 because the University had advised Doe and his attorney on April 16, 2020, "that the university's complaint resolution process is facilitated internally, and any communication regarding the case needs to come directly from you and not your attorney." (*Id.* at p. 8; PageID.8). The email further stated: "If you had a conflict with that date, it was your responsibility to communicate those issues with Dr. Agnew in a timely manner, which you did not do."  (*Id.*). On November 2, 2020, Doe's counsel responded to the University's email as follows: "Ms. Preyear-thank you for your email; however, we did reach out to Ms. Agnew on October 13, 2020 regarding the scheduling issue. If you proceed with this hearing without me being present [sic] will prejudice his rights to fair representation and due process. Please reconsider your decision to move this matter to the following week as we have a conflict that we made the University aware as soon as we found out." (*Id.* at pp. 8-9; PageID.8-9). On November 2, 2020, the University replied as follows, "Mr Doe: Please let me know whether or not you intend to participate in the hearing scheduled for Friday, November 6th." (*Id.* at p. 9; PageID.9). On November 2, 2020, Doe again requested that the hearing be rescheduled, "Hello Ms. Preyear, Can we please schedule the hearing to a date the following the week of November 6th, as my Doeyer [sic] has already disclosed scheduling conflicts with the date of November 6th? Any date that you all choose the following week of November 6th, we will make them work. Please." (*Id.*). On November 2, 2020, Preyear responded, "Thank you for your response, but we cannot reschedule the hearing date at this point in time. I apologize for any inconvenience that this may cause you. Please let me know whether or not you will participate in the hearing." (*Id.*).

On November 3, 2020, Doe responded to Preyear as follows, "Hello Ms. Preyear,

Based on advice from counsel, I will not be participating. Thanks." (*Id.*).

The hearing was held on November 6, 2020, without Doe being present, and a

Notice of Decision and Sanctions was rendered against him on November 11, 2020,

wherein he was found responsible for violation of USA's Policy against Sexual

Misconduct-Sexual Harassment. (*Id.*). Doe filed an appeal, which read as follows:

"Dear Dean Mitchell:
Please accept this letter as my appeal of the decision in my case. I am appealing on the following grounds:
(1) There was a material and prejudicial violation of my right to procedural and substantive due process in that a decision was made without me being allowed to participate fully in the process and this affected the outcome of the hearing.

On October 15, 2020, my Doeyer [sic] informed school administrators of a conflict with the November 6, 2020 hearing date. Specifically, my counsel informed Dr. Andrea Agnew that he had a mediation scheduled in Memphis, Tennessee on the proposed hearing date and asked her to propose alternative dates the week of November 9th, 2020. Instead of the school administrators contacting me or my counsel regarding any problems with our request or that there was a problem with its form, they waited to the eve of the hearing to deny it. These administrators went on with the hearing without me.

I was denied equal protection under the Doe [sic] as well as the most fundamental guarantees of due process—without a hearing, without any opportunity to present my side of the story and was falsely declared guilty of sexual harassment. Moreover, the school failed to afford me the requisite presumption of innocence required by a preponderance of the evidence.

(2) The discipline imposed is excessive because at the most the incident in question here was a minor inadvertent touching-not sexual intercourse. However, due to my being found "Responsible" has basically banned me from large parts of University life and required me to attend sexual harassment training as if I am some kind of sex offender. Put simply, the punishment here is too severe, especially given that there is not one scintilla of evidence that I have engaged in a pattern and/or practice of aberrant sexual behavior. Based on the foregoing, I respectfully request

that the decision regarding Case Number: 2018046102 be vacated or rescinded.

(*Id*. at pp. 9-10; PageID.9-10).

Doe was allowed to meet with Mitchell and express his side of the story. (*Id*. at p. 10; PageID.10). Mitchell affirmed the University's decision. (*Id*.). The sanctions imposed against Doe were a ban on any contact of any sort with Roe, a ban from University residential buildings and dining halls, a requirement to complete the Sexual Assault Prevention Online Training Course, a requirement to write a 500 word essay regarding the information he learned from the course; and a requirement to write a letter of apology to Roe. (*Id*. at pp. 10-11; PageID.10-11).

## STANDARD OF REVIEW

As set forth above, Defendants argue that Plaintiff's claims are due to be dismissed because they are immune from Doe's alleged claims and/or because Doe has failed to state a claim against these Defendants upon which relief can be granted. The issue of whether a motion to dismiss based upon Eleventh Amendment immunity is properly brought pursuant to Rule 12(b)(1) or Rule 12(b)(6) is unclear. *See Lambert v. Bd. of Tr. of the Univ. of Ala.*, Case No.: 2:18-cv-1112-JEO, 2019 WL 339178, at *7 (N.D. Ala. Jan. 28, 2109). While the Eleventh Amendment immunity defense "partakes of the nature of a jurisdictional bar," *Edelman v. Jordan,* 415 U.S. 651, 678 (1974), prompting many courts to apply the standard of review applicable to Rule 12(b)(1) dismissals, *see Boglin v. Bd. of Tr. of Ala. A&M Univ.*, 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018) and *Harris v. Bd. of Tr. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1231 (N.D. Ala. 2012), unlike claims that lack subject matter jurisdiction, federal courts are not obligated to raise the Eleventh Amendment immunity issue *sua sponte* and the

5

immunity can be waived by the State, *see Wisconsin DOC v. Schacht*, 524 U.S. 381, 389 (1998); therefore, some courts have applied the standard of review applicable to Rule 12(b)(6) challenges, *see Shands Teaching Hosp. and Clinics, Inc.  v. Beech St. Corp.*, 208 F. 3d 1308, 1310 (11th Cir. 2000). Considering these cases, this Court agrees with those who apply the Rule 12(b)(1) standard.

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003)). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint," and when considering a facial challenge, "the court must … take the complaint's allegations as true." *Id.* "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Id.* "In such an instance, the court may hear conflicting evidence and decide the factual issues bearing on jurisdiction."  *Boglin*, 290 F. Supp. 3d at 1261.

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements, and the allegations must be considered in the light most favorable to the plaintiff. *See id.; Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997).

In addition, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,'" *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003)), or "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## CONCLUSIONS OF LAW

As set forth below, the three claims asserted against Defendants by John Doe are due to be dismissed.

## A. Due Process Claim

Doe alleges in Count II that Defendants violated his 14th Amendment due process rights by holding the hearing without his presence, conducting a biased and incomplete investigation, holding a hearing without proper due process protections,

imposing sanctions on him without considering the exculpatory evidence he provided, not according him the presumption of innocence, and not giving him an opportunity to cross-examine his accuser and witnesses.[4] (Doc. 1, PageID.17-18). He seeks damages, attorney's fees, and injunctive relief. (*Id.*, PageID.18-19). Defendants argue that Doe's due process claim should be dismissed because 1) they are entitled to Eleventh Amendment and state immunities, 2) they are not persons subject to suit under 42 U.S.C. § 1983, and 3) Doe otherwise fails to state a claim upon which relief may be granted. For the reasons set forth below, the Court agrees that the University of South Alabama and its Board of Trustees are immune from the claims set forth in Count II of Doe's Complaint.

### 1. Eleventh Amendment and State Immunity

"It is firmly established that the Eleventh Amendment immunizes unconsenting states from private suits in federal courts for retrospective money damages, whether brought by their own citizens or by citizens of other states." *Ostroff v. St. of Fla. Dep't of Health & Rehab. Servs.*, 554 F. Supp. 347, 355 (M.D. Fla. 1983). A state's Eleventh Amendment immunity extends to statewide agencies. *Id.* State law guides the determination of whether the entity raising the defense can be considered an "agency or instrumentality" of the state.  *Harris v. Bd. of Trs. Univ. of Ala.*, 846 F. Supp. 1223, 1233 (N.D. Ala. 2012). The Eleventh Circuit has held that state universities in Alabama, as arms of the state, are entitled to Eleventh Amendment immunity. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985); *see also Davis v. Alabama State Univ.*, 613 F. Supp.

---

[4] Doe refers to the University and its Board of Trustees together as "Defendant" or "USA" throughout the Complaint. (*See* Doc. 1, PageID.1.) He makes no distinction between the Defendants in any factual allegations.

134, 139-140 (M.D. Ala. 1985) (holding that the Eleventh Amendment protects state university from former employee's § 1983 suit); (Doc. 1, PageID.4) ("USA is a public research university that was created by the Alabama Legislature.") This doctrine has been extended to Boards of Trustees, concluding that the Board is an agency or instrumentality of the state that is generally immune from suits brought by citizens for monetary relief. *Eubank v. Leslie*, 210 F. App'x 837, 844-45 (11th Cir. 2006); *Harris*, 846 F. Supp. at 1233.

In addition to immunity from liability for monetary damages, states and their agencies are also immune from suits seeking prospective injuctive relief. *Page v. Hicks*, 773 F. App'x 514, 517-518 (11th Cir. 2019) (affirming dismissal of UAB Board of Trustees from claims for monetary and injunctive relief under Eleventh Amendment). The *Ex parte Young* exception which allows suits seeking prospective injunctive relief applies only to state officers. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993). Because the Board of Trustees "is an 'arm of the state' itself – and not an individual officer – [Doe's] request for injunctive relief against [the University and its] Board fails too. *Page*, 773 F. App'x at 518. Therefore, both the University of South Alabama and its Board of Trustees are immune under the Eleventh Amendment to Doe's due process claim.

Similarly, State immunity under Alabama Constitution, Article I, § 14 requires that the claim against the University be dismissed. Section 14 "specifically prohibits the State from being made a party defendant in any suit at law or in equity" and "state agencies are 'absolutely immune from suit.'" *Harris*, 846 F. Supp. 2d at 1235 (internal citations omitted). The Board of Trustees fits within this immunity protection, as well.

*Hutchinson v. Bd. of Trs. of Univ. of Ala.*, 256 So. 2d 281, 282 (Ala. 1971) (holding that the Board of Trustees of the University of Alabama was entitled to "governmental immunity" under Article I, Section 14 of the Alabama Constitution).

### 2. Failure to State a Claim

In addition, Doe has failed to state a claim upon which relief may be granted against the University or the Board of Trustees because neither is a "person" subject to suit under 42 U.S.C. § 1983. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The University of South Alabama is a state institution of higher learning and is not a person. Similarly, the University's Board of Trustees, as an entity, is not a person or state official subject to suit under § 1983. *Harris*, 846 F. Supp. 2d at 1243 (dismissing §1983 claim against trustees); *see also Gaby v. Bd. of Trs. of Cmty. Tech. Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (holding that boards of trustees of state colleges and universities are not subject to suit under §1983); *McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 456-57 (6th Cir. 2014) (dismissing due process claim against university and its board of trustees as neither was a "person" subject to suit under §1983 and Eleventh Amendment immunity attached because they were arms of the state).

### B.   Breach Of Contract Claim.

Doe concedes that his Complaint "in its current form" does not state a viable breach of contract claim, Doc. 15 at p. 12n.4, Page ID. 74; therefore, his breach of contract claim is due to be dismissed for that reason. However, even if he properly set forth a claim for breach of contract, that claim too would be due to be dismissed on the

basis of Eleventh Amendment and State sovereign immunities. As discussed above, the University of South Alabama is a public university created by act of the Alabama Legislature. Ala. Code § 16-55-1 *et seq*.; *see also See Ex parte Univ. of S. Ala.*, 183 So. 3d 915, 919 (Ala. 2015). As an instrumentality of the state, the University and its Board of Trustees enjoy Eleventh Amendment immunity. *Beasley v. Ala. St. Univ.*, 3 F. Supp. 2d 1304, 1307 (M.D. Ala. 1998). "Thus, as a general proposition, the eleventh amendment bars all of [plaintiff]'s claims against [USA], regardless of the relief []he seeks." *Id*., *citing Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment . . . .  This jurisdictional bar applies regardless of the nature of the relief sought."); *Page*, 773 F. App'x at 517-18 (state university Board of Trustees is considered the State for purposes of Eleventh Amendment immunity); *Lambert v. Bd. of Trs. of Univ. of Ala.,* No. 2:18-cv-1112-JEO, 2019 WL 339178, at *8 (N.D. Ala. Jan. 28, 2019) (dismissing claim against Board under Eleventh Amendment immunity).

Moreover, under Article I, Section 14 of the Alabama Constitution, "the state and its agencies have absolute immunity from suit in any court." *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). "Section 14 specifically prohibits the State from being made a party defendant in any suit at law or in equity." *Robinson v. Gadsden St. Cmty. Coll.*, No. 4:14-cv-1538-VEH, 2016 WL 1212532, at *6 (N.D. Ala. Mar. 29, 2016) (internal quotations and citation omitted). This immunity may not be waived.  *Ala. St. Univ. v. Danley*, 212 So. 3d 112, 122 (Ala. 2016).  The contract claim against the University and its Board of Trustees is due to be dismissed.  *See, e.g.*, *Carter v. Bd. of Trs. of Univ. of*

*Ala. in Birmingham, 431 So. 2d 529, 531 (Ala. 1983)* ("It is clear that the Board shares the state's constitutional immunity from suit.").

**C.**   **Title IX Claim**

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a)(1988). This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to "bar[ ] the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.* at 715.

Courts have recognized four general categories of Title IX challenges to university disciplinary proceedings. In *Yusuf*, the Second Circuit recognized two categories of potential Title IX claims for gender bias arising from a student disciplinary proceeding: erroneous outcome and selective enforcement. *Yusuf*, 35 F.3d at 715. Erroneous outcome challenges are those where "gender bias played a role in the wrongful conviction of an innocent student," and selective enforcement challenges are those where "the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both." *Doe v. Lynn Univ., Inc.*, 224 F. Supp. 3d 1288, 1291 (S.D. Fla. 2016) (citing *Yusuf*). Courts have also recognized a "deliberate indifference" challenge, under which "a plaintiff must 'demonstrate that an official of the institution who had

authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct'" and an "archaic assumptions" challenge, under which a plaintiff seeking equal opportunities must demonstrate that a university's discriminatory actions resulted "'from classifications based upon archaic assumptions.'" *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (quoting *Mallory v. Ohio Univ,* 76 F. App'x 634, 638 (6th Cir. 2003)).

### 1. Selective Enforcement

Doe captions his Title IX claim (Count I) as a claim for selective enforcement. (Doc. 1, PageID.11). A selective enforcement challenge involves situations where "the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both." *Doe v. Lynn Univ., Inc.*, 224 F. Supp. 3d at 1291. To support a selective enforcement claim that gender affected the penalty imposed or the decision to initiate the proceeding, the male plaintiff must allege "that a female student was in circumstances sufficiently similar to his own and was treated more favorably" by the university. *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003) (citation omitted), *quoted in Doe v. Univ. of S. Ala.,* Civ. A. No. 17-0394-CG-C, 2020 WL 759895, at *12 (S.D. Ala. 2020).

In his complaint, Doe identifies the female student, Jane Roe, who is the alleged victim, as being in circumstances sufficiently similar to him and treated more favorably by the University. (*Id.*). But Jane Roe is not and cannot be a comparator because she was not, like Doe, accused of sexual misconduct.[5] *Doe v. Univ. of the South*, 687 F.

---

[5] Nowhere in Doe's complaint does he allege that he made a complaint against Jane Roe of sexual misconduct/harassment, like she made of him, or that any such complaint was made against Roe at any time by anyone else.

Supp. 2d 744, 756-57 (E.D. Tenn. 2009) (plaintiff must allege that "a female was in circumstances sufficiently similar *to Doe* and was treated more favorably"). Doe has not alleged that any similarly situated female student, accused of sexual misconduct or harassment, received a more lenient punishment, or that his punishment was disproportionate for a charge of sexual misconduct/harassment. *Doe v. Univ. of S. Ala.,* 2020 WL 759895, at *12; *see also Doe v. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-682-T-30EAJ, 2015 WL 3453753, at *4 (M.D. Fla. May 29, 2015) (dismissing Title IX claim because male plaintiff failed to identify a female comparator in a similar position who was treated more favorably). To the extent that Doe alleges that he was treated differently with regard to the initiation of the proceeding against him because charges were not brought against Jane Roe, his claim fails because he has not alleged that any complaint was ever made against Jane Roe. *Doe v. Univ. of S. Ala.,* 2020 WL 759895, at *12.

**2. Erroneous Outcome**

In addition, although Doe captioned his Title IX claim as one for selective enforcement, he does make reference to "erroneous outcomes" in paragraph 50 of his Complaint and argues in support of such a challenge in his response to the motion to dismiss. (Doc. 1, Page ID.13; Doc. 15). "A plaintiff bringing an erroneous outcome challenge must plead two elements: (1) facts sufficient to cast doubt on the accuracy of the proceeding and (2) a causal connection between the flawed outcome and gender bias." *Doe v. Univ. of S. Ala.*, 2020 WL 759895, at *13 (citation omitted) (dismissing erroneous outcome claim for lack of a causal connection between the flawed outcome and gender bias); *see also Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018)

14

("a student must show both that he was 'innocent and wrongly found to have committed an offense' and that there is 'a causal connection between the flawed outcome and gender bias.'") (quoting *Yusuf*, 35 F.3d at 715). A plaintiff may meet the first part of this analysis by alleging, for example, evidentiary weaknesses at the hearing level, such as "a motive to lie on the part of the complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge." *Yusuf*, 35 F.3d at 715. "However, allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id*. Rather, plaintiffs must allege particularized facts that support a "causal connection between the flawed outcome and gender bias." *Id. "*A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*

Doe alleges that the decisions of the hearing and appeal processes were erroneous outcomes which were the result of a flawed and biased proceeding in which the University assumed that Doe was guilty solely because he was a male accused of sexual misconduct rather than evaluating the case on its own merits. According to Doe, the Title IX investigator met with Doe during which Doe denied Roe's allegations, and since the evidence was disputed, the investigator could not draw any conclusions. (Doc.1, PageID.7). Therefore, the matter was set for a hearing, and a hearing was held where it was determined that Doe was "responsible." (*Id.,* PageID.7-9). Because his

attorney was not available on the date of the hearing, Doe, upon his attorney's advice, did not attend the hearing. (*Id.,* PageID.8-9). Doe filed a written appeal of the hearing decision with Michael Mitchell, the Vice-President for Student Affairs and Dean of Students, and met with Mitchell to express his side of the story. (*Id.,* PageID.9-10). Mitchell affirmed the University's decision. (*Id.,* PageID.10-11).

Doe supports his Title IX claim by making several generalized statements about the University's policies regarding sexual misconduct claims. He alleges that the University "adopted its current Sexual Misconduct Policy in direct response to pressure from the U.S. Education Department's Office of Civil Rights ("OCR")" which sent a letter to universities in 2011 that prompted "many schools [to change] their sexual assault and sexual harassment policies and procedures in a manner that, while not completely ignoring due process concerns, shifted the focus more on victim advocacy." (*Id.,* PageID.12). He further alleged:

> 45. OCR further said: "Legal commentators have criticized the 2011 Letter ... for placing improper pressure upon universities to adopt procedures that do not afford fundamental fairness."
> 46. As a result, many schools have established procedures for resolving allegations that lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation.
> 47. On May 6, 2020, the Department of Education released a Final Rule under Title IX of the Education Amendments of 1972. The rule prohibits many of the current practices of schools like USA for the investigation and adjudication of allegations of sexual misconduct. The Final Rule, inter alia, prescribes a transparent grievance process that treats accused students as innocent until proven guilty, requires the school to state a standard of evidence, and requires the school to provide a hearing process where accused students may question adverse witnesses. The Final Rule will carry the force and effect of law as of August 14, 2020.
> 49. On information and belief, USA, like other schools nationwide, was scared of being investigated or sanctioned by the Department of Education for not taking seriously complaints of female students alleging sexual assault by male students. Sanctions would include the loss of

16

eligibility for all federal funding. Upon information and belief, USA annually receives millions of dollars in government grants and contracts, and students depend on federal financial aid.

50.  The decisions of the hearing process and the appeal process for John Doe were erroneous outcomes which were the direct result of a flawed and biased proceeding. In a fair and unbiased system, whether someone is a 'victim" is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning.

51.  USA has reversed this process and assumed that John Doe was guilty because he was a male accused of sexual misconduct rather than evaluating the case on  its  own  merits. The circumstances of the investigatory process and appeal process cast doubt on the accuracy of the outcome of the disciplinary proceeding.

52.  The Department of Education regulations and guidance state that Title IX requires a fair and equitable process for the adjudication of allegations of sexual misconduct.

53.  USA did not provide a fair and equitable process. USA committed impermissible gender bias against John Doe in the investigation and adjudication of Jane Roe's accusations.

53.  USA's decision-makers and its investigators were motivated to favor the accusing female over the accused male, so as to protect themselves and USA from accusations that they had failed to protect female students from sexual assault.

(*Id*., PageID12-13).

Doe further alleges that "particular circumstances suggest that gender bias was a motivating factor behind the erroneous finding" and that these circumstances include that the University "has instituted solutions to sexual violence against women that abrogate the civil rights of men and treat men differently than women," has applied flawed or incorrect legal standards and employed biased or negligent investigatory techniques," and has "officials and administrators who had the authority to institute corrective measures [who] had actual notice of and failed to correct the misconduct." (*Id*., PageID14). Doe also complains that the University failed to investigate adequately and question Jane Roe's credibility and assumed that he, an accused male student, was not truthful and reliable.

While Doe may have adequately pled facts that potentially cast doubt on the accuracy of the proceeding, namely, allegations concerning Jane Roe's credibility and/or motive to lie, Doe does not allege sufficient facts to maintain a Title IX claim based on an erroneous outcome challenge because he has not sufficiently alleged a causal connection between the outcome and his gender. Doe fails to allege anything more than conclusory assertions regarding the University's motivations. The only specific allegations relate to his own case and do not support an inference of discriminatory intent. In *Doe v. Case Western Reserve University*, No. 1:14CV2044, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015), the district court dismissed the plaintiff's Title IX erroneous outcome claim because the plaintiff relied on conclusory statements in an effort to establish a plausible claim that the university was motivated by sexual bias in arriving at an erroneous finding in its disciplinary proceedings against him. *Id*. at *5. The plaintiff in that case stated that the university's preferential treatment of Jane Roe over the plaintiff was "undeniably" linked to her female gender and against plaintiff's male gender and pointed to procedural defects as evidence of discriminatory bias. The court stated that "[w]hile these pleadings may call into question the outcome of the proceedings, they are not factual allegations supporting the conclusion that the procedural flaws and hostility towards Plaintiff were motivated by sexual bias." *Id*. Importantly, there were no factual allegations to support the conclusion that there was discrimination based on sex, which the court said could have included "*inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id*. at *6, quoting *Yusef*, 35 F.3d at 715.  The court held that "a single case by an individual who was displeased by the result of a

disciplinary proceeding cannot constitute a pattern of decision-making." *Id.; see Mallory,* 76 F. App'x at 639-40 (citing *Yusuf*, 35 F.3d at 715) (noting "one case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision making,' referred to in *Yusuf* as a basis for finding bias").

Similarly, here, there are no factual allegations to support gender-based discrimination, such as statements by decisionmakers or patterns that would show the influence of gender. Doe makes only conclusory statements, like in *Case Western*, that preferential treatment was linked to gender, without any factual basis. As noted in *Doe v. University of South Alabama*, Doe's generalized reference to the Dear Colleague Letter is insufficient to show gender bias. 2020 WL 759895, at *13. "Absent university-specific allegations of community pressure, allegations of a national bias against males based on the letter have been found insufficient to support an inference of gender bias." *Id.; see also Doe v. Cummins*, 662 F. App'x 437, 452-53 (6th Cir. 2016) (noting reference to the Department of Education's "Dear Colleague Letter" as evidence of federal pressure was "conclusory" and did not create a plausible claim). Doe fails to allege any targeted stress USA has faced from government institutions or the public at large for the University's handling of previous sexual misconduct complaints on campus, such that it would cause USA to favor the accusing female over the accused male because of the accused male's gender. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992-993 (D. Minn. 2017). Doe's allegation that the University was prompted to discriminate against males in sexual-assault investigations and hearings to preserve federal funding is also "insufficient to create a plausible claim of gender bias under Title IX." *Doe v. Univ. of S. Ala.*, 2020 WL 759895, at *13.

Courts have wisely acknowledged "the difficulties of plausibly pleading gender bias absent 'smoking gun' evidence of gender-based statements. But given *Twombly* and *Iqbal*, Plaintiff's claim must fail absent factual allegations sufficient to support the plausible inference that he was discriminated against on the basis of his gender." *Doe v. Lynn Univ.*, 224 F. Supp. 3d at 1294-95 (holding that allegations of pressure on an institution or a general climate of hostility resulting in gender bias is not enough; there must also be allegations of "specific facts supporting a plausible inference that this national backlash resulted in gender-based disciplinary proceedings"). To the extent Plaintiff intended to state a Title IX erroneous outcome claim, his claim fails because the facts he alleges are not sufficient to support a causal connection between a flawed outcome and gender bias.

### 3. Deliberate Indifference

"The 'deliberate indifference' standard is applied where a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory,* 76 F. App'x at 638)(citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277 (1998)). To support a Title IX claim under the deliberate indifference standard, the plaintiff must allege facts demonstrating "that the Unversity's alleged actions constituted sexual harassment." *Doe v. Univ. of the South*, 687 F. Supp 2d at 758. Plaintiff's complaint "fails to allege any facts to support a finding that the University's actions were at all motivated by John Doe's gender or sex or constituted gender harassment or sexual

harassment." *See id.* Accordingly, Plaintiff has not stated a Title IX claim based on the deliberate indifference standard.

## CONCLUSION

For the reasons set out in this Order, Count II (due process violation) and Count III (breach of contract) of Doe's Complaint are due to be and are hereby **DISMISSED, with prejudice,** because Defendants are immune from suit for those causes of action. Count I (Title IX) is due to be and is hereby **DISMISSED, without prejudice,** for failure to state a claim. Plaintiff has requested leave to amend his complaint, *see* Doc. 15 at p. 22-23, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Based on the grounds stated in the request, the Court hereby **GRANTS** Plaintiff's request to amend his complaint. Any such amendment must be filed within thirty (30) days of entry of this Order.

**DONE** and **ORDERED** this the **24th** day of **August, 2021**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**